## Mary A. Robinson and William L. Robinson v. John J. Henaghan.

1. LANDLORD AND TENANT—*As to Repairs Made Necessary by the Tenant's Fault.*—A landlord is under no obligations to make repairs when such repairs are made necessary by the negligence of the tenant, for which such tenant is responsible, and he should not be permitted to visit the consequences of his negligence upon his landlord.

2. EVICTION—*When an Entry to Make Repairs is Not.*—An entry by the landlord at the request of the tenant for the purpose of making repairs is not an eviction.

3. LEASE—*Abrogation of, When Under Seal.*—A lease under seal is not to be abrogated by vague and uncertain testimony.

Action for Rent.—Appeal from the Superior Court of Cook County; the Hon. ELBRIDGE HANECY, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1900. Reversed and remanded. Opinion filed January 15, 1901.

JOHN KING, attorney for appellants.

WM. A. CUNNEA, attorney for appellee.

MR. JUSTICE HORTON delivered the opinion of the court.

Appellants leased to appellee the dwelling house, 4649 Calumet avenue, for the term of two years from May 1, 1898, the rent being made payable monthly. This suit was commenced May 1, 1899, by appellants against appellee to recover for rent unpaid under said lease. In the trial court a judgment was rendered against appellants for costs and they prosecute this appeal to reverse that judgment.

That appellee executed the lease, entered into possession of the premises, continued to reside there until December 2, 1898, received the premises when the same were in good condition and repair, and did not pay rent for a part of the term prior to May 1, 1899, are conceded facts.

November 29, 1898, the grates in the heating apparatus were burned out or melted and dropped down and for that reason the house could not be properly heated. Such

Robinson v. Henaghan.

grates were comparatively new, having been put in the preceding January. The undisputed testimony is that they were in use by appellee and were destroyed because the ashes under them were not removed, that being negligence on the part of appellee.

Appellee informed appellant Wm. S. Robinson that the furnace was out of order and was told to ask the parties who put it in to repair it. This appellee did, but as they did not go to the house to make the repairs as quickly as he desired, he, the same day, applied to L. K. Smith & Brother, the agents of appellants to collect the rents. They told him to go to another party. He did so, and that party at once and in the presence of appellee called Smith & Brother on the telephone and were by them told to go to the house and make the repairs. The second party applied to, proceeded at once to the house and made the repairs, which were not completed until December 3, 1898. Appellee contends that it was cold weather at the time, that the house could not be properly warmed, that the repairs were not made as promptly and quickly as they might and should have been, and that he was therefore justified in moving out of the house, which he did December 2d. He rented the house into which he moved November 30th, before it was possible to have replaced the grates, which had been destroyed by his fault and not that of appellants. The rent to be paid to appellants under said lease is $55 per month, and that of the house to which appellee moved was either $25 or $35 per month and appellee swore that he could not tell which, but that " that had nothing to do with our moving."

Appellants were under no legal obligation to make such repairs. (Friedman v. Schwabacher, 64 Ill. App. 423; Mc-Coull v. Herzberg, 33 Ill. App. 542.) Such repairs were made necessary by negligence for which appellee is responsible and he should not be permitted to visit the consequences upon the appellants.

The re-entry (if it be such) by appellants at the request of appellee to make the repairs to the furnace was not an eviction. (Humiston, Keeling & Co. v. Wheeler, 70 Ill. App.

349.) But it is contended by appellee that there was unreasonable delay in making the repairs and that he was by that justified in leaving the premises and absolved from liability to pay rent under said lease. This contention is not sustained by the evidence.

The parties to whom the appellants referred the appellee to have such repairs made had the castings on hand with which to make the repairs. The party to whom the second application was made had to have the grates cast and he swears that it was done as quickly as it could be. But appellee must have intended to vacate the house without regard to any delay in making repairs for he rented another house at once.

Appellee had much more to do with procuring the parties to make the repairs than appellants did. Practically appellants only assented to appellee's act in procuring parties to make the repairs. Neither of the appellants nor Smith & Brother went to either of the parties applied to, to make such repairs.

It is also contended by counsel for appellee that there "was sufficient evidence of the termination of appellee's tenancy." This contention is based wholly upon the testimony of the appellee which in that regard is as follows, viz:

"The moving was completed the evening of December 2d, between eight and nine o'clock. I went back the next morning (December 3d) for the keys. I found both men at work and ordered them out. The evening before, Smith says, when you move out, deliver me the keys. I asked them how they got in, and they said through the window. I ordered them out, locked the window, delivered the keys, and threatened to call an officer, because I had orders from Smith to return the keys and leave the premises.

Mr. Monroe moved us. It was the afternoon we moved that Smith instructed me to leave the keys."

That testimony is not sufficient to sustain the position of appellee. He does not state to whom he delivered the keys. The connection would indicate that it was to the workmen. But of course he does not mean that. The only other parties he refers to in connection with the keys are Smith &

Robinson v. Henaghan.

Brother. But he does not state to what person, or where, or whether they were accepted by anybody authorized to receive them. This testimony is too vague and uncertain to support a claim that a sealed instrument was thus abrogated.

But more than that. There is no testimony whatever that Smith & Brother were agents for appellants with power to cancel the lease or terminate the tenancy. It can not be implied that they were agents with that power from the fact that they were agents to collect the rents. The lease appears to be signed by appellants in person, not by Smith & Brother as agents or attorneys in fact.

Appellee says that it was the evening of December 2d, that "Smith says, when you move out, deliver me the keys." That was the same evening when he says the moving was completed. That does not amount to a request or consent, or agreement to terminate the liability of appellee to pay rent. The lease provides that if appellee should vacate or abandon the premises, the same should be re-let by appellants and that appellee should pay to appellants, all loss, if any, occasioned by such vacating and re-letting. Even by the statement of appellee it does not appear that Smith requested him to vacate the premises. He had already vacated them or was doing so. It was then the duty of appellants, under said provision of the lease, to re-rent the premises upon the best terms that they could. To do that it was very desirable that the keys should be accessible.

Not only is there no testimony tending to show that "Smith" or Smith & Brother had any authority so to do, but the testimony is not sufficient to show that he or they ever assumed or agreed to the termination of said tenancy or to assent to the vacation or abandonment of said premises, or to accept a surrender thereof. There is no theory upon which, from this record, the judgment of the trial court can be sustained.

The judgment of the Circuit Court is reversed and the cause remanded.