John M. Scanlan, Defendant in Error, v. Joseph Hoerth, Plaintiff in Error.

### Gen. No. 14,713.

1. LANDLORD AND TENANT—*what does not establish surrender.* The testimony of the lessee as to conversations with a rent collecting agent of the lessor to the effect that such agent said that such lessor had told him (the agent) that he might accept from the lessee the keys to the premises and the surrender of the same, does not establish a legal surrender. The burden of proving a surrender rests upon the lessee.

2. LANDLORD AND TENANT—*when agent not authorized to surrender.* An authority to collect rent does not presumptively carry with it the power to cancel a renting contract under seal.

3. LANDLORD AND TENANT—*obligation of landlord to re-rent upon abandonment.* In case of abandonment by the tenant, the authorities are that the landlord may re-enter and re-rent if he can, but he is under no legal obligation to re-rent if he can; having an opportunity to re-rent and not doing it does not deprive him of his remedy upon the lease.

Action commenced before justice of the peace. Error to the Circuit Court of Cook county; the Hon. RICHARD S. TUTHILL, Judge, presiding. Heard in this court at the October term, 1908. Affirmed. Opinion filed November 22, 1909. Rehearing denied December 6, 1909.

HOWARD E. LEACH, for plaintiff in error.

KICKHAM SCANLAN, for defendant in error.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

This action originated in the court of a Cook county justice of the peace and was tried *de novo* on appeal to the Circuit Court by the defendant, whose defenses were unavailing in both courts to prevent plaintiff from recovering his demand. This demand is for rent for the months of November and December, 1904, at thirty dollars per month, for the first floor of 2111 West Harrison street, Chicago, and both judgments were for sixty dollars. The trial judge in the Circuit Court directed the jury to find the verdict which they did, and after overruling a motion for a new trial the court entered judgment upon the verdict, and defendant sues out this writ of error, which has been made to operate as a supersedeas by the order of this court, and asks a reversal of the Circuit Court judgment and urges as reasons for such request that the court erred in directing a verdict and that the premises for which rent was sought had been surrendered prior to its accruing; that plaintiff evicted defendant from the

premises, and that plaintiff maliciously refused to re-rent the premises to a prospective tenant.

Whether it was error to direct a verdict depends upon the disposition of the other reasons assigned as error, and whether the evidence of defendant, if true, presented any legal defense to plaintiff's claim.

The surrender claimed rests for its support in the testimony of defendant as to conversations with the rent collecting agent of plaintiff, the agent saying to defendant that plaintiff had told him, the agent, that he might accept from defendant the keys to the premises and the surrender of the same. This testimony was clearly hearsay and inadmissible. The burden of proving a surrender rested upon defendant as an affirmative defense by competent proof. The only proof in the record as to the agent's authority was that he was authorized to collect rent. Such authority does not presumptively carry with it the power to cancel a renting contract under seal. Robinson v. Henaghan, 92 Ill. App. 620. Moreover it is axiomatic that agency cannot be estabished by the declaration of the agent. There was an utter lack of evidence tending to prove that the rent collecting agent of plaintiff had authority to accept a surrender of the leased premises and terminate the lease thereof to defendant. The acceptance of the key by the agent of plaintiff for the purpose of procuring access to the shop to stop an overflow of water did not operate as an acceptance of a surrender of the premises and a cancellation of the lease. The proof shows that defendant erected a building during his tenancy of plaintiff's premises, and moved into it therefrom. It appears that quarrels occurred between plaintiff and defendant, and that assaults were committed upon defendant, his wife and daughter, by plaintiff; that so serious were these occurrences that they culminated in the arrest of plaintiff and the imposition of a fine for his illegal conduct. This conduct of plaintiff is said to constitute an eviction of defendant sufficient to justify his abandonment of the prem-

ises and the termination of his lease. We do not wish to be understood as in any way palliating or condoning the reprehensible conduct of plaintiff in his assaults upon his tenant and family; but nevertheless such violence, inexcusable as it may have been, did not constitute an eviction of defendant nor justify an abandonment by him of the premises. Moreover, it is patent that he moved to occupy his own building, which he assumedly had in mind to do when he built it. He made no claim to his landlord that he moved because of his aggressiveness, amounting to an eviction, but assigned a different reason entirely, namely, an acceptance by plaintiff of a surrender of the possession; and finally defended on the ground of plaintiff's failure to accept a new tenant for the two months for which rent is claimed. These positions are inconsistent, and more particularly so in light of the fact that defendant continued in possession of the premises and paid rent therefor after the last assault made upon him or his family. Furthermore, he was just as capable of repelling plaintiff's assaults from the leased premises as from his own across the street, where he moved, for his possession of the leased premises was as conclusive against any right of reprisal by plaintiff as of the rest of the world. The fact that plaintiff committed assaults upon the tenant, whose landlord he was, in no way excused such illegal conduct or minimized his liability to answer either civilly or criminally for such assaults. His liability was no more and no less than it would have been had the assaults been committed upon the premises of a stranger.

Defendant contends that it was the duty of plaintiff to re-rent the premises to one Westcott, who was willing to become the tenant of plaintiff prior to the accruing of the rent recovered. Aside from the fact that at the time Westcott sought to rent the premises, defendant still retained possession, it is insisted under the authority of W. S. A. H. Co. v. Conn. Mut. Life Ins. Co., 186 Ill. 156, that it was plaintiff's duty to re-

232. Consequently the word embraces the listening to

rent them. While some remarks made by the court in that case may be interpreted as announcing such a doctrine, they are clearly *obiter dicta*. The court held in that case that the delivery of the keys to the landlord and the putting up by him of "to rent" signs did not work a cancellation of the lease as to the balance of the term or relieve the lessee from the payment of the stipulated rent. This court said in Rau v. Baker, 118 Ill. App. 150, speaking through Mr. Justice Adams: "In Humiston, Keeling Co. v. Wheeler, 175 Ill. 514, 516, the court say: 'In case of an abandonment, without fault of the landlord, or as the result of his acts, he may re-enter and again rent the premises and credit the lessee with the proceeds; and his so taking possession does not relieve from the payment of rent.' This was said in answer to the claim by the tenant that the landlord's entry was an eviction. While in case of abandonment by the tenant the authorities are that the landlord may re-enter and re-rent if he can, we know of no case in which it has been held that the landlord must, if he can, re-rent, or lose his remedy against the lessee on the lease; nor do we think any such case can be found. The contract remains in force notwithstanding the abandonment of the premises by the tenant, and the tenant's covenant to pay rent is unimpaired; and we cannot understand how the tenant, by his own wrongful act, can impose on the landlord the alternative of diligently seeking another tenant or losing his remedy on the covenant."

There being no evidence fairly tending to prove the defenses offered, the court properly instructed the jury to render a verdict for plaintiff for the rent claimed.

The judgment of the Circuit Court is affirmed.

*Affirmed.*