### ARGUED AND DETERMINED

#### IN THE

# SUPREME JUDICIAL COURT

#### OF

# MASSACHUSETTS.

EDWIN S. WOODBURY & another, trustees, *vs.* SPARRELL PRINT.
SAME *vs.* R. EDWIN SPARRELL.

Suffolk. November 20, 1907. — February 29, 1908.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & RUGG, JJ.

*Landlord and Tenant. Contract*, Performance and breach. *Practice, Civil*, Exceptions. *Evidence*, Presumptions and burden of proof. *Pleading, Civil*, Answer.

In an action by the owner of a business building against his former lessee of certain floors of the building under a lease which the plaintiff had terminated for non-payment of rent, on a covenant that in such event the lessee should be liable to the lessor for all loss and damage sustained by the lessor on account of the premises remaining unleased or being let for the remainder of the term for a less rent than that reserved in the lease, the plaintiff must show that he used reasonable diligence to make the loss or damage as light as he reasonably could but the reasonable diligence required of him relates to letting the leased premises for the remainder of the term, and the plaintiff is not required to join any other part of the building to the premises covered by the terminated lease or to try to let the premises for a longer term in order to make a more advantageous lease.

In an action by a landlord against his former lessee under a lease which the plaintiff had terminated for non-payment of rent, on a covenant that in such event the lessee should be liable to the lessor for all loss and damage sustained by the lessor on account of the premises remaining unleased or being let for the remainder of the term for a less rent than that reserved in the lease, where the leased premises consisted of the third, fourth and fifth floors of a large building

used for business purposes, the whole of which belonged to the plaintiff, and there remained an unexpired period of sixteen months out of a term of five years, upon the issue whether the plaintiff had used reasonable diligence to re-let the premises for the unexpired part of the term, it is error for the presiding judge, after giving to the jury the correct instruction that the plaintiff was "not required to make additions to or alterations in the premises as an aid to securing a new tenant" and was under no obligation "to let the premises for a longer term or to put any other premises in with these premises in order to get them let," to leave it for the jury to determine whether the principle of the instruction should be applied to the case, instead of stating the principle to them as a rule of law which they must follow.

A presiding judge properly may refuse to make a ruling upon the effect of isolated facts considered apart from others bearing upon the same general question.

In an action by a landlord against his former lessee under a lease which the plaintiff had terminated for non-payment of rent, on a covenant that in such event the lessee should be liable to the lessor for all loss and damage sustained by the lessor on account of the premises remaining unleased for the remainder of the term, the plaintiff must show, not only that the premises remained unoccupied, but also that this state of things was in no respect due to his own negligence, and the burden is upon him to prove that he exercised due diligence to relet the premises. Where the answer in such a case sets up negligence on the part of the plaintiff, it does not allege matter in confession and avoidance but merely denies diligence in reletting, which is an essential element of the plaintiff's case.

TWO ACTIONS OF CONTRACT, each for $3,400 and interest, the first against the Sparrell Print, a corporation, as lessee under a lease for a term of five years from August 1, 1899, of the third, fourth and fifth floors of the building numbered 55 on Franklin Street in Boston, excepting the stairways and hallways to be used in common with other tenants of that building, to recover damages from loss of rent, under a covenant in the lease as described in the opinion, and the second action against R. Edwin Sparrell, as guarantor of the performance of all the terms and conditions of the lease by the defendant in the first case. Writs dated respectively March 20, 1905, and September 19, 1904.

In the Superior Court the cases were tried before *Richardson*, J. The only defense relied upon was that the plaintiffs did not make proper efforts to relet the premises. The material facts are stated in the opinion.

The plaintiffs asked the judge to make the following rulings:

1. That on all the evidence the plaintiffs are entitled to recover.

2. The plaintiffs are entitled to recover for the period that

the premises, which were the subject of the lease in question, remained unleased.

3. The plaintiffs were not obliged to use any effort to get new tenants for the premises in order to recover for the period that the premises in question remained unleased.

4. The plaintiffs were not required to repair the premises out of their own funds as an aid in securing a tenant to entitle them to recover.

5. The plaintiffs had a right to rely on their best judgments exercised in good faith in determining the time of making repairs and the amount of repairs.

6. The plaintiffs were not required to make additions to or alterations in the premises as an aid to securing a new tenant to entitle them to recover.

7. The plaintiffs had the right to reject the offer of Samuel Ward Company made in its letter of May 17, 1903, because it involved changes in and additions to the premises and a longer term than remained of the lease.

8. The plaintiffs were not obliged to make a counter offer to the Samuel Ward Company as to price if the two elements were fixed, namely, the five years' lease and the changes and additions proposed.

9. The burden of proving want of diligence by the plaintiff in reletting is on the defendant.

10. Interest is to be reckoned on the several instalments of lost rent from the time the lease provided that they severally became due.

The judge refused to make any of these rulings as requested except the sixth. His charge to the jury was in part as follows :

" The lessors were not bound absolutely to let the premises, perhaps they could not, and if they used fair, honest judgment and made reasonable honest efforts to let the property and could not do so to get an income from it, they did all that they were required by the law to do. Referring to what is claimed and what has been argued I will say further, I do not think that the plaintiffs were obliged to make alterations or additions to the structure of those premises or to put these premises in with the other premises in order to let them, yet if the roof by

being worn out leaked or if the stairs by being worn out were unsafe or appeared to be unsafe, I am not sure that the plaintiffs might not be under an obligation to make such repairs if they reasonably could do so in order to let these premises.

"I leave that question whether they should have made any repairs or such repairs as I have indicated, or any other, or even other repairs, I leave it all to you, because when a case comes down to be decided ordinarily upon the reasonableness of a thing being done or not done, as a rule that question of reasonableness is left to a jury, although in some cases the court interferes upon decisions of the highest courts and either lets a case go to the jury or not as he thinks the law has decided.

"On the other hand I do not think that the lessors were justified in insisting if they did, on getting the full rental value or full rent of $2750, and yet, — the clause in the lease referred to intimates, or at least suggests the possibility if they take possession and relet the premises that they may not be able to get that, the full rental. The clause is 'in case of such determination the lessee shall be liable to the lessor for all loss and damage sustained by the lessors on account of the premises remaining unleased or being let for the remainder of the term for a less rent than that herein reserved.' That implies I think pretty strongly that if these plaintiffs could have let those premises for even a less rental they were under this reasonable obligation to let them and get a less rental if they could, by reasonable efforts I mean. They were not obliged, I should say the lessors were not obliged in order to let these premises to put other premises in with them. At the same time if by putting other premises in which they had to let and wanted to let and could let as well as not, and they so could have got an income from these premises, then it might be a question and I think it is a question for you to say whether or not they should not have done that. . . .

"I have been asked by the learned counsel for the plaintiff to give you some instructions. I cannot give the first, or the second, or the third. The fourth I give in part. 'The plaintiffs were not required to repair the premises out of their own funds as an aid in securing a tenant to entitle them to recover.' If by repairs mentioned here it refers to alterations or additions in the

structure of the building, like removing floors or partitions or altering the structure of the building, I should say they were not required to make those repairs or large repairs, and I give that if it means that, but if it means, the repairs there, if it means only repairing the roof so as to make it safe and tight and in a condition to be occupied, or if the stairs by being worn out had become unsafe and unsuitable, then I think you may consider whether or not in view of the circumstances and the situation, whether or not they ought not to have made those repairs, if by making those repairs to the roof and stairs, and possibly the doors and some others — you may consider whether or not under all the facts and circumstances they should not have made those small repairs in order to have performed their obligation under lease.

"Fifth. ' The plaintiffs had a right to rely on their best judgment exercised in good faith in determining the time of making repairs and the amount of repairs.' That is true, if they take into account the fact that these defendants were also interested to some extent in that matter. These plaintiffs could not act entirely regardless of the defendants, the Sparrell Print, as I have said before, because there was a relation there between these parties existing after the termination of the lease, and as the Supreme Court of the United States in this case has said, ' It was the duty to prevent unnecessary loss or diminution of rent in consequence of the termination of this lease, so far as they could, by using fair, reasonable diligence and effort to let them so as to get some income out of them.' They were not obliged to let to an irresponsible tenant, — there has been nothing said in this case about that as far as I know, — they would not be obliged to, they would not be obliged to let to anybody that would run down and depreciate the character of the building probably. There has been nothing said about that, no intimation of that. I thought I would say that because it seemed to me pertinent or proper that I should do so.

"The sixth of the plaintiffs' requests I give to you. ' The plaintiffs were not required to make additions to or alterations in the premises as an aid to securing a new tenant to entitle them to recover.' And I will say in that connection what I have said before, it rests with the jury to say whether in the

exercise of due diligence and care and in the performance of their duty they may not have been required to make some slight repairs such as I have stated to make the premises tenantable and presentable to tenants who might come to see them.

" The seventh request I think is for the jury, or the question raised by the seventh request is for the jury. ' The plaintiffs had the right to reject the offer of Samuel Ward Company made in its letter of May 17, 1903, because it involved changes in and additions to the premises and a longer term than remained of the lease.' Whether they should have rejected the offer of Ward and Company or broken off the negotiations, if they did, I don't recall just now how it stopped, or whether they should have gone on with the negotiations and tried to make further efforts to let these premises to Ward and Company is for your consideration and your determination.

" The eighth request is, ' The plaintiffs were not obliged to make a counter offer to the Samuel Ward Company as to price if the two elements were fixed, viz: the five years' lease and the changes and additions proposed.' I do not recall, I shouldn't undertake to state if I did, exactly what these offers were or what the counter offer was. That is a question as I have just stated, for you to consider.

" The ninth. ' The burden of proving want of diligence by the plaintiff in reletting is on the defendant.' I do not give that.

" The tenth. ' Interest is to be reckoned on the several instalments of lost rent from the time the lease provided that they severally became due.' I cannot give that. There is no rent due as rent. The rent is ended. That is a sum of money that describes the amount to be paid in the lease, and when that is terminated they were not liable for rent as rent. These defendants are liable if at all for damage and loss. That is all. It is not rent as rent, and in the case which has been referred to it is decided that no action could be maintained for that loss and damage until the lease had expired, but the plaintiffs here are not entitled to rent as rent, in that name, although I say — I have said if you find that the plaintiff did their whole duty in this case you may consider the amount mentioned in the lease on the question of damages, but it is not conclusive, you can

only refer to that as showing what perhaps the parties on both sides reasonably thought the premises were worth at the time this lease was given."

At the close of the charge the plaintiffs requested further instructions, and excepted to the parts of the charge where the judge left it to the jury to determine whether it was the duty of the plaintiffs to hitch to the short term remaining of the defendant's lease a longer term of the same premises or to include other premises. They also excepted to the part of the charge which referred to repairs, and the refusal of the judge to give the rulings requested by the plaintiffs and to the rulings given inconsistent therewith.

The judge then further instructed the jury as follows : " Counsel think perhaps there is a misunderstanding about one thing. The impression seems to have been that I did not refer to the matter of whether it was the duty of the plaintiffs or not to let these premises for a longer term than a year and four months or for a time extending beyond the termination of this lease. What I meant to do, or intend to do, what I say now is, the plaintiffs were not under any obligation to let it for a longer term or to put any other premises in with these premises in order to get them let. What I meant to say, if they could have done so and you find it was a reasonable thing and they had opportunities to do so and no reason appears to you why they should not have done so, then it is for you to say whether or not they should not have let them, or at least whether or not I had better say they should not have used reasonable diligence to so let them. Now I don't say, I do not mean to intimate that they should or should not have let those premises in connection with any others or for a longer term than beyond the termination of the lease. In view of the somewhat peculiar facts and circumstances and situation of this case, which is all before you, I mean to say that I leave that question all to you. The plaintiffs were not bound to do anything unreasonable as landlords, as owners of property, not at all, — they were only bound to do what was reasonable and to use reasonable diligence in that event, not bound absolutely to do anything, that is what I mean to say, and I meant to leave all those questions for you."

The plaintiffs excepted to this additional instruction. The

jury returned a verdict for the defendant in each case; and the plaintiffs alleged exceptions.

*G. R. Swasey,* (*W. H. Brown* with him,) for the plaintiffs.

*G. C. Abbott,* for the defendants.

HAMMOND, J.   These are two actions of contract brought, the one against the lessee and the other against the guarantor, upon a clause in a lease given by the predecessors in title of the plaintiffs, which provides, *inter alia,* that for non-payment of rent the lessors may enter upon the premises and "repossess the same as of their former estate; and, in case of such determination, the lessee shall be liable to the lessors for all loss and damage sustained by the lessors on account of the premises remaining unleased, or being let for the remainder of the term for a less rent than that herein reserved."   The lease ran by its terms until August 1, 1904, but on April 4, 1903, the plaintiffs terminated it by entry for non-payment of rent, and then tried unsuccessfully to relet the premises.

At the trial the only defence relied upon was that the plaintiffs "did not use due, proper and reasonable diligence to relet." Upon this question the judge ruled in substance that the plaintiffs owed to the defendant the duty to use reasonable diligence and to make the loss or damage to the defendants as light as they reasonably could.   As a statement of a general rule applicable to cases like this, the ruling was correct.   *International Trust Co.* v. *Weeks,* 203 U. S. 364.   See also same case, 125 Fed. Rep. 370.   But we think the plaintiffs have just cause for complaint as to the way in which the judge dealt with this principle when applied to the facts of this case.

The leased premises consisted of the third, fourth and fifth floors of a large building used for business purposes.   The lease was for five years from August 1, 1899.   Upon complying with the terms of the lease the lessee had the right to occupy these floors with stairways and other appurtenances for that five years, but the lease did not give any right to occupy the premises for any other five years, or to occupy any other part of the building. The lessee vacated the premises about September 1, 1902.   At that time it had the right to hold the premises until August 1, 1904, and, with the written consent of the plaintiffs, to assign or sublease, if it could, provided always that it paid the rent and

otherwise complied with the terms of the lease. Instead of doing that it chose to abandon the premises and default as to rent, giving to the plaintiffs the right to terminate the lease. The lessee thus voluntarily placed in the hands of the plaintiffs these premises and only these premises, and even them only for the time between April 4, 1903, to August 1, 1904, a period of about sixteen months. It was only to these premises and for these sixteen months that the duty of the plaintiffs attached. Although the plaintiffs were the owners of the whole building, yet the defendants had no right to call upon them to join any other part of the building to the premises which the lease had covered in order to make a more advantageous lease. In this respect a reasonable diligence to relet the premises for the unexpired term named in the lease was all the duty the plaintiffs owed to the defendant.

While in charging the jury the presiding judge had said that he " should say [that] the lessors were not obliged in order to let these premises to put other premises in with them," yet there was other language in the charge somewhat weakening the effect of this statement, and seeming to leave the question to the jury. At the close of the charge the plaintiffs took exceptions to it, contending among other things that on the whole charge the judge had left to the jury to " determine whether it was the duty of the plaintiffs to hitch to the short term remaining of the defendants' lease a longer term of the same premises or to include other premises." Whereupon the judge further instructed the jury upon these points. Upon a careful reading of the charge, including its supplement so far as material to the point now under consideration, it appears that while the judge stated it as his view that, in order to relet, the plaintiffs were under no obligation " to let the premises for a longer term or to put any other premises in with these premises in order to get them let," yet he did finally leave the question to the jury to determine whether that principle was applicable to the facts of the case. In this there was error. The measure of the plaintiffs' duty in this respect was a question of law and not of fact, and the plaintiffs were entitled to have the rule stated to the jury as a rule by which they were to be bound. Because this was not done the plaintiffs' exceptions must be sustained.

In view of the result to which we have come, it is unnecessary to consider the first ruling requested. The second and third were rightly refused, for reasons already stated. The fourth and fifth were properly refused in the form in which they were presented. The judge seems to have dealt in a proper way with them. The sixth was given. The seventh and eighth were objectionable as calling for the ruling of the judge upon the effect of certain isolated facts when considered apart from others bearing upon the same general question, namely, whether the plaintiffs exercised due diligence. Whether the plaintiffs by pursuing the matter with the Samuel Ward Company could have succeeded in letting to that concern, and whether they ought to have tried it, were only some of the considerations to be passed upon by the jury on the question of the diligence of the plaintiffs.

The ninth request was properly refused. This was not a case where negligence was the ground upon which liability was based. It was incumbent upon the plaintiffs to show not only that the premises remained unoccupied, but also that this state of things was due in no respect to their own negligence. In other words, it was upon them to show that they had performed the duty owed to the defendant to exercise due diligence to relet. The plaintiffs could not therefore safely have rested with the simple proof of the non-occupancy of the premises. Had there been no further evidence it could not have been found that due diligence had been proved. When therefore the answer sets up neglect of the plaintiffs it must be considered not as a defence in the way of confession and avoidance, but as a denial of the existence of one of the essential elements of the case of the plaintiffs, namely, due diligence as to reletting. The burden of showing due diligence was upon the plaintiffs.

It is unnecessary to consider the other exceptions.

*Exceptions sustained.*